### IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### BECKLEY DIVISION

| | | |
|---|---|---|
| **JOSE SLAUGHTER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 5:08-1016 |
| | ) | |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Defendant.** | ) | |

### PROPOSED FINDINGS AND RECOMMENDATION

Pending before this Court is the United States' Motion to Dismiss (Document No. 9.), filed on August 7, 2009. The Court notified Plaintiff pursuant to Roseboro v. Garrison, 528 F.2d 304 (4th Cir. 1975), that Plaintiff had the right to file a response to the United States' Motion and submit Affidavit(s) or statements and/or other legal or factual material supporting his claims as they are challenged by the United States in moving to dismiss. (Document No. 11.) On September 10, 2009, Plaintiff filed his "Brief in Opposition to the United States' Motion to Dismiss." (Document No. 12.) The United States filed their Reply on September 15, 2009. Having examined the record and considered the applicable law, the undersigned has concluded that the United States' Motion to Dismiss should be granted.

### FACTUAL AND PROCEDURAL HISTORY

On August 21, 2008, Plaintiff, formerly an inmate at Butner Federal Medical Center, Butner, North Carolina,[1] and acting *pro se*, filed his Complaint in this matter claiming entitlement to relief

---

[1] By letter dated December 11, 2009, Plaintiff notified the Court that he had been released from custody and provided his new address. (Document No. 17.)

pursuant to the Federal Tort Claims Act, 28 §§ 1346(b) and 2671, et seq.[2] (Document No. 1.) Plaintiff paid the $350.00 filing fee on September 22, 2008. (Document No. 4.) Plaintiff alleges that federal employees at FCI Beckley acted with negligence by "allow[ing] abnormal tissue to turn to cancer" or failing to "detect cancer in its early stage before it could have spread to other parts of Plaintiff's body." (Document No. 1, pp. 19 - 20.) Plaintiff claims that on March 15, 2005, he first complained of "pain under his left nipple where a lump had formed."(Id., p. 2.) Plaintiff contends that the lump under his left breast was not surgically removed until June 9, 2006. (Id., p. 4.) Plaintiff states that he was informed that he had cancer on June 13, 2006. (Id.) On June 22, 2006, Plaintiff alleges that Dr. Rajiv Khanna, M.D., "informed Plaintiff that his condition, that is, the original cyst under his left breast, likely would not have turned to cancer had the cyst been surgically removed when Plaintiff first began to complain about it." (Id.) Plaintiff states that he was transferred to FMC Butner on June 30, 2006. (Id.) Plaintiff states that he continued to suffer "severe pain in his left arm, chest, and sides" following his transfer to FMC Butner. (Id., pp. 6 - 8.) Plaintiff asserts that on June 2, 2008, Plaintiff was informed that "cancer had been found again." (Id., p. 8.) Plaintiff alleges that on June 10, 2008, Dr. Akbar "advised that my primary care providers at FCI Beckley had failed to detect the cancerous tumor near Plaintiff's spine and bones." (Id.) Plaintiff therefore contends that BOP employees were "negligent in their diagnoses and/or treatment, leading to actual injury of Plaintiff by failing to take such reasonable care that would have either prevented Plaintiff's abnormal tissue located under his left nipple from turning cancerous or, if already cancerous, reasonable care that would have likely

---

[2] Because Plaintiff is acting *pro se*, the documents which he has filed in this case are held to a less stringent standard than if they were prepared by a lawyer, and therefore they are construed liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

prevent cancer from spreading in Plaintiff's body as did occur but which could have been easily prevented with proper care." (Id., p. 10.) Plaintiff requests damages in the amount of five million dollars. (Id., p. 19.)

By Order entered on July 9, 2009, the Court directed the Clerk to issue process by preparing and serving a Summons and a copy of Plaintiff's Complaint upon the United States as specified in Rule 4(i)(1) of the Federal Rules of Civil Procedure. (Document No. 5.) The Summons were returned executed. (Document Nos. 6 and 7.) On August 7, 2009, the United States filed its Motion to Dismiss and Memorandum in Support. (Document Nos. 9 and 10.) The United States argues that Plaintiff's complaint should be dismissed because Plaintiff failed to file a screening certificate of merit as required by the West Virginia Medical Processional Liability Act [MPLA]. (Id.)

Notice pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), was issued to Plaintiff advising him of his right to file a response to the United States' Motion to Dismiss. (Document No. 11.) On September 10, 2009, Plaintiff filed his "Brief in Opposition to the United States' Motion to Dismiss" and Declaration in Support. (Document No. 12.) Plaintiff argues that the United States' Motion to Dismiss should be denied based on the following: (1) Plaintiff is excused from filing a screening certificate of merit because his claim is based on a well established theory of care that does not require an expert's testimony (Id., pp. 1 - 4.); and (2) the MPLA's requirement that a screening certificate of merit be filed violates prisoners' right to equal protection (Id., pp. 4 - 6.). On September 15, 2009, the United States filed its Reply arguing as follows: (1) "If an exception to compliance with the MPLA is to be made, it is the Legislature's prerogative to do so;" (2) "Plaintiff's assertion that the provisions of Section 6 of the MPLA are unconstitutional because it violates the equal protection clause because of his status as a pro se inmate are without merit;" (3) Expert testimony is necessary

because Plaintiff's "complaints and their etiology either individually or collectively are complex medical issues that are not within the knowledge of lay persons;" and (4) The Court should not appoint Plaintiff an expert pursuant to Rule 706 of the Federal Rules of Evidence because "Plaintiff is not indigent and the MPLA requires that plaintiff obtain the certificate of merit before an action is filed, thus before Fed. R. Evid. 706 would become applicable."[3] (Document No. 13.)

## THE STANDARD

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do. Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." Bell Atlantic Corporation v. Twombly, 550 U.S. 554, 127 S.Ct. 1955, 1959, 167 L.Ed.2d 929 (2007)(reference to Conley v. Gibson, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), omitted.) Dismissal is proper under Rule 12(b)(6) where, construing the allegations of the Complaint in a light most favorable to the Plaintiff and assuming the alleged facts to be true, it is clear as a matter of law that no relief could be granted under any set of facts which could be proven consistent with the allegations. Deference is given to *pro se* Complaints. See Gordon v. Leeke, 574 F.2d 1147, 1153 (4th Cir. 1978)(A District Court should allow *pro se* plaintiffs reasonable opportunity to develop pleadings.); Coleman v. Peyton, 340 F.2d 603, 604 (4th Cir. 1965)(*Pro se* plaintiff should be given an opportunity to particularize potentially

---

[3] The Court notes that it would lack authority under Rule 706 of the Federal Rules of Evidence to appoint an expert prior to a case being filed with the Court. The MPLA clearly requires that a plaintiff obtain a screening certificate of merit prior to filing suit.

viable claims.). A *pro se* Complaint may therefore be dismissed for failure to state a claim only if it appears "'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Haines v. Kerner, 404 U.S. 519, 521, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972), quoting Conley v. Gibson, 355 U.S. 41, 45 - 46 (1957). Where a *pro se* Complaint can be remedied by an amendment, however, the District Court may not dismiss the Complaint with prejudice, but must permit the amendment. Denton v. Hernandez, 504 U.S. 25, 34, 112 S.Ct. 1728, 1734, 118 L.Ed.2d 340 (1992).

## DISCUSSION

Plaintiff asserts a negligence claim under the Federal Tort Claims Act against the United States Government. Such claims are appropriately raised against the United States under the Federal Tort Claims Act [FTCA], 28 U.S.C. §§ 2671-2680. An inmate "can sue under the FTCA to recover damages from the United States Government for personal injuries sustained during confinement in a federal prison, by reason of the negligence of a government employee." United States v. Muniz, 374 U.S. 150 (1963). The FTCA provides at § 2674 as follows:

> The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages.

The FTCA, however, does not create a new cause of action. Medina v. United States, 259 F.3d 220, 223 (4th Cir. 2001). The statute merely "permits the United States to be held liable in tort in the same respect as a private person would be liable under the law of the place where the act occurred." Id.

In the present case, Plaintiff alleges that the negligent acts occurred in the State of West Virginia. Accordingly, West Virginia State law applies. Under West Virginia law, a plaintiff must

satisfy certain prerequisites prior to filing suit against a health care provider. Specifically, a plaintiff must serve each defendant health care provider with a notice of claim with an attached screening certificate of merit executed under oath by a health care provider qualified as an expert under the West Virginia Rules of Evidence at least thirty (30) days prior to filing suit. W. Va. Code § 55-7B-6.[4] This Court has previously recognized that compliance with West Virginia Code § 55-7B-6 is mandatory prior to filing suit in federal court. Stanley v. United States, 321 F.Supp.2d 805, 806-07 (N.D.W.Va. 2004); also see Starns v. United States, 923 F.2d 34 (4th Cir. 1991)(holding that Virginia's medical malpractice liability cap applies to claims brought against the United States under the FTCA). West Virginia Code § 55-7B-6(c), however, provides that no screening certificate of merit

---

[4] West Virginia Code § 55-7B-6 provides the following in pertinent part:

(a) Notwithstanding any other provision of this code, no person may file a medical professional liability action against any health care provider without complying the provisions of this section.

(b) At least thirty days prior to the filing of a medical professional liability action against a health care provider, the claimant shall serve by certified mail, return receipt requested, a notice of claim on each health care provider the claimant will join in litigation. The notice of claim shall include a statement of the theory or theories of liability upon which a cause of action may be based, and a list of all health care providers and health care facilities to whom notices of claim are being sent, together with a screening certificate of merit. The screening certificate of merit shall be executed under oath by a health care provider qualified as an expert under the West Virginia rules of evidence and shall state with particularity: (1) The expert's familiarity with the applicable standard of care in issue; (2) the expert's qualifications; (3) the expert's opinion as to how the applicable standard of care was breached; and (4) the expert's opinion as to how the breach of the applicable standard of care resulted in injury or death. A separate screening certificate of merit must be provided for each health care provider against whom a claim is asserted. The person signing the screening certificate of merit shall have no financial interest in the underlying claim, but may participate as an expert witness in any judicial proceeding. Nothing in this subsection may be construed to limit the application of Rule 15 of the Rules of Civil Procedure.

is necessary where "the cause of action is based upon a well-established legal theory of liability which does not require expert testimony supporting a breach of the applicable standard of care."

Plaintiff's Complaint alleges that federal employees at FCI Beckley acted with medical negligence by "allow[ing] abnormal tissue to turn to cancer" or failing to "detect cancer in its early stage before it could have spread to other parts of Plaintiff's body." (Document No. 1, pp. 19 - 20.) In its Motion to Dismiss, the United States contends that Plaintiff's Complaint should be dismissed because Plaintiff failed to timely and properly file a notice of claim and a screening certificate of merit pursuant to the MPLA. In Response to the United States' Motion, Plaintiff argues that (1) Plaintiff is excused from filing a screening certificate of merit because his claim is based on a well established theory of care that does not require an expert's testimony (Id., pp. 1 - 4.); and (2) the MPLA's screening certificate of merit requirement is unconstitutional as it violates a prisoner's right under the Equal Protection Clause. (Id., pp. 4 - 6.)

### A. Plaintiff is Not Excused from Filing a Screening Certificate of Merit.

Citing Johnson v. United States, 394 F.Supp.2d 854, 858 (S.D.W.Va. 2005), Plaintiff alleges that "[t]he facts of the instant case are such that the administrative claim filed by Plaintiff is sufficient to satisfy West Virginia Code Section 55-7B-6(c)." (Document No. 12.) Specifically, Plaintiff argues that "[t]he facts presented in Plaintiff's administrative claim 'relates to non-complex matters of diagnosis and treatment within the understanding of lay jurors by resort to common knowledge and experience,' so that expert testimony is not required on the accepted standard of care. The medical care provided in the instant case was clearly negligent . . .." (Id., p. 3.) Plaintiff contends that medical personnel at FCI Beckley acted with gross negligence in failing to properly examine and treat the lump that was discovered under his breast. (Id., pp. 3 - 4.) Therefore, Plaintiff argues that the United

7

States is not entitled to dismissal for failure to file a screening certificate of merit. (Id.)

The United States replies that Plaintiff's claims are complex and require expert testimony. The United States contends that the complaints of pain under Plaintiff's breast were originally evaluated as a cardiac conditions and then as an orthopedic issue. (Document No. 13, pp. 3 - 7.) The United States explains that upon Plaintiff's arrival at FCI Beckley on May 20, 2004, Plaintiff failed to report any medical complaints or pain. (Document No. 14, pp. 1 - 2.) On March 15, 2005, Plaintiff was evaluated based upon his complaints of a racing heart beat and intermittent chest pain under the nipple area. (Id., p. 4.) Medical personnel noted that the pain was non-tender to the touch and determined that it was "chest pain of unsure etiology." (Id.) On March 31, 2005, Plaintiff complained of "sharp stabbing pain beneath my left breast for the past two weeks - on/off. This morning I felt my heart racing and couldn't get my breath." (Id., p. 5.) Plaintiff explained that he was having sharp pains in the area of his left lower ribs when taking deep breaths, but the sharp pains occurred infrequently every one to two months for the past one and half years. (Id., pp. 5 - 6.) Medical personnel determined that it was "probably costochrondistic pain." (Id., p. 6.) Subsequently, Plaintiff was diagnosed with breast cancer and treatment began. The United States asserts that following Plaintiff's diagnosis with breast cancer, Plaintiff reported to his treating physician on July 14, 2006, that he first noticed a lump in his left breast in September, 2004. (Id., p. 7.) The United States alleges that Plaintiff never reported a lump in his left breast to the medical staff at FCI Beckley. (Document No. 13, p. 5.) The United States argues that Plaintiff's complaints of "chest pain, a racing heart beat, an undisclosed lump under his left breast and, pain that on examination is nontender to the touch," are complex medical issues that are not within the knowledge of lay persons. (Id.) Therefore, the United States contends that "[c]oupled with the very low incident of plaintiff's disease, an expert is

needed to address these medical conditions and determine whether the applicable standard of care was met by the Health Services' staff when evaluating plaintiff's complaints and whether any alleged violations of the standard of care were the proximate cause of his alleged injuries and damages." (Id., pp. 5 - 6.)

Under West Virginia law, "[i]t is the general rule that in medical malpractice cases, negligence or want of professional skill can be proved only by expert witnesses." Syllabus Point 2, Roberts v. Gale, 149 W.Va. 166, 139 S.Ed.2d 272 (1964). Expert testimony, however, is not required "where the lack of care or want of skill is so gross as to be apparent, or the alleged breach relates to noncomplex matters of diagnosis and treatment within the understanding of lay jurors by resort to common knowledge and experience." Farley v. Shook, 218 W.Va. 680, 629 S.E.2d 739 (2006). The MPLA provides as follows concerning claims "based upon a well-established legal theory of liability":

> Notwithstanding any provision of this code, if a claimant or his or her counsel, believes that no screening certificate of merit is necessary because the cause of action is based upon a well-established legal theory of liability which does not require expert testimony supporting a breach of the applicable standard of care, the claimant or his or her counsel, shall file a statement specifically setting forth the basis of the alleged liability of the health care provider in lieu of a screening certificate of merit.

West Virginia Code § 55-7B-6(c). In Johnson v. United States, 394 F.Supp.2d 854, 858 (S.D.W.Va. 2005), the Court held that plaintiff's statement on his administrative claim form alleging improper surgical implantation of a prosthesis satisfied the provisions of the MPLA permitting the filing of a claim without submitting a certificate of merit. Id. The Court reasoned that Plaintiff's claim was based upon a well-established legal theory of liability and expert testimony was not required to show a breach of the standard of care because Plaintiff stated on his form that the surgeon "implanted the

9

too large Prosthesis backward causing diminished bloodflow and subsequent Necrosis and infection." Id. at 858.

The undersigned finds that Plaintiff's reliance on Johnson v. United States is misplaced. Unlike the facts in Johnson, Plaintiff's allegations of medical negligence are complex and expert testimony is necessary. See O'Neil v. United States, 2008 WL 906470 (S.D.W.Va. Mar. 31, 2008)(finding that plaintiff was not excused from filing a screening certificate of merit because the treatment and diagnosis of Graves disease, hyperthyroidism, congestive heart failure, and cardiomyopathy, are not within the understanding of lay jurors by resort to common knowledge and experience). In the instant case, it appears that the medical staff at FCI Beckley evaluated, diagnosed, and provided treatment to Plaintiff based upon his complaints of a racing heart beat, intermittent chest pain, and sharp stabbing pains beneath his left breast. Expert testimony is necessary to support any finding that the medical treatment provided by the staff at FCI Beckley fell below the applicable standard of care and Plaintiff's cancer became terminal and spread throughout his body because of their negligence. The undersigned finds that the early symptoms of breast cancer in men, and appropriate treatment options, are not within the understanding of lay jurors by resort to common knowledge and experience. Accordingly, Plaintiff is not excused from filing a screening certificate of merit pursuant to West Virginia Code § 55-7B-6(c). The undersigned, therefore, recommends that Plaintiff's claims be dismissed because there is nothing in Plaintiff's Complaint or exhibits indicating that Plaintiff complied with the requirements of West Virginia Code § 55-7B-6.

  **B.** **The MPLA is Constitutional As-Applied to Prisoners.**

As stated above, the undersigned finds no indication in the record that Plaintiff complied with the prerequisites set forth in the MPLA. Plaintiff states, however, that "the requirement under West Virginia law that a certificate of merit must be obtained prior to filing a medical malpractice suit all

but precludes a federal prisoner from filing such a suit in West Virginia." (Document No. 12, pp. 4 - 5.) Specifically, Plaintiff argues that his rights under the equal protection clause have been violated because "West Virginia law governing the filing of a medical malpractice suits operates to unintentionally discriminate against federal prisoners in that the law requires a process that nearly 100% of federal prisoners are unable to fulfill." (Id., p. 5.) Thus, Plaintiff appears to allege that MPLA is unconstitutional because it unduly restricts prisoners from seeking redress in the Court for medical malpractice claims. Specifically, Plaintiff argues that the MPLA restricts prisoners from filing suit based on the following: (1) "A reading of the CFR and the BOP's policy statements disclose not a single provisions for a federal prisoner to obtain a certificate of merit toward filing a claim under the FTCA or other civil action such as a Bivens claim;" and (2) "No provision under the law allows incarcerated persons to obtain a certificate of merit in forma pauperis."[5] (Id.) Therefore, Plaintiff states that "federal prisoners in West Virginia will be denied equal protection under the laws of the state unless, or until, some provisions is made by the federal government to ensure that federal prisoners in West Virginia have access to a qualified medical expert who can make, under oath, a statement concerning the accepted standard of care governing the treatment at issue in a particular prisoner's case." (Id.)

The undersigned views Plaintiff's assertions as an "as-applied" challenge to the constitutionality of the MPLA. See Giarratano v. Johnson, 521 F.3d 298 (4th Cir. 2008); Fisher v. King, 232 F.3d 391, 396 (4th Cir. 2000)(considering inmates' contentions that a Virginia statutory exclusion of inmates from making requests for public records under the Virginia Freedom of Information Act is unconstitutional). First, Plaintiff contends that as-applied, the MPLA burdens his

---

[5] The undersigned notes that Plaintiff is not proceeding *in forma pauperis*.

constitutional right of access to the Courts. It is well-established that indigent inmates have a constitutional right of access to the Courts. <u>Bounds v. Smith</u>, 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977). Access to the Courts must be adequate, effective and meaningful under the Federal Constitution. <u>Bounds</u>, 430 U.S. at 822, 97 S.Ct. at 1495. The undersigned finds that Plaintiff's right of access to the Courts is not burdened through the application of the MPLA in the context in which he finds himself. The MPLA does not exclude claims of inmates. Plaintiff is as entitled and capable of proceeding in Court with a medical negligence claim as anyone else provided he provides a notice of claim and a certificate of merit in conformity with the statute. Accordingly, Plaintiff's above "as-applied" constitutional challenge to the MPLA is without merit.

Second, Plaintiff alleges that the MPLA "as-applied" violates his rights under the Equal Protection Clause.[6] Generally, the Equal Protection Clause prohibits states from creating unreasonable, arbitrary, and invidious classifications. <u>Barefoot v. City of Wilmington</u>, 37 Fed.Appx. 626 (4th Cir. 2002). A law does not violate the Equal Protection Clause if it is rationally related to a legitimate government interest, unless the law employs suspect classification or significantly burdens a fundamental right. <u>Id.</u> In the instant action, there is no suspect classification or significant burdened placed upon a fundamental right. The Fourth Circuit has clearly stated that "[p]risoners are not a suspect class." <u>Roller v. Gunn</u>, 107 F.3d 227, 233 (4th Cir. 1997). Based on a review of the MPLA and Plaintiff's situation, the undersigned finds that the MPLA is rationally related to a legitimate state interest. The Legislature enacted the MPLA in response to a perceived crisis in the availability and affordability of liability insurance for health care providers and the availability of quality health care

---

[6] Plaintiff does allege that any other person, prisoner or non-prisoner, has been allowed to file a medical liability suit without either filing a screen certificate of merit or meeting the requirements of the exception as set forth in West Virginia Code §55-7B-6(c).

for patients.[7] W. Va. Code §§ 55-7B-1. The West Virginia Supreme Court determined that "the purposes of requiring a pre-suit notice of claim and screening certificate of merit are (1) to prevent the making and filing of frivolous medical malpractice claims and lawsuits; and (2) to promote the pre-suit resolution of non-frivolous medical malpractice claims." Hichman v. Gillette, 618 S.E.2d 387, 394, 217 W.Va 378, 385 (2005)(finding that the statutory requirement of a pre-suit notice of claim and screening certificate of merit is not intended to restrict or deny citizens' access to the courts); see also State ex rel. Miller v. Stone, 607 S.E.2d 485, 489, 216 W. Va. 379, 384 (2004)(stating that "the Legislature's clear intent in enacting W. Va. Code § 55-7B-6 was to mandate that a plaintiff in a medical malpractice claim file his or her certificate of merit at least 30 days prior to filing his or her medical malpractice action so as to allow healthcare providers the opportunity to demand pre-litigation mediation"). Further, a statute does not violate the Equal Protection Clause simply because in practice it results in some inequality.[8] See Columbus Bd. of Educ. v. Penick, 443

---

[7] West Virginia Code 55-7B-1 provides that "it is the duty and responsibility of the Legislature to balance the rights of our individual citizen to adequate and reasonable compensation with the broad public interest in the provision of services by qualified health care providers and health care facilities who can themselves obtain the protection of reasonably priced and extensive liability coverage."*Id.* The Legislature further stated that "in recent years, the cost of insurance coverage has risen dramatically while the nature and extent of coverage has diminished, leaving health care facilities and the injured without the full benefit of professional liability insurance coverage."

[8] The West Virginia Supreme Court held that the MPLA provision placing a statutory cap on non-economic loss did not violate the Equal Protection Clause of the West Virginia Constitution. *Verba v. Ghaphery*, 210 W.Va. 30, 552 S.E.2d 406 (2001)(finding that the statutory one million cap on non-economic damage awards in medical malpractice actions did no violate the state equal protection provision); *Robinson v. Charleston Area Medical Center*, 414 S.E.2d 877 (1991)(finding that the statutory cap on non-economic loss awards in medical malpractice cases did not violate malpractice plaintiffs' equal protection rights, either by discriminating between medical professional liability victims and other tort victims, or by discriminating between medical professional liability victims with non-economic loss less than one million and victims with non-economic loss exceeding

U.S. 449, 464, 99 S.Ct. 2941, 61 L.Ed.2d. 666 (1979)(A statute's "disparate impact and foreseeable consequences, without more, do not establish a constitutional violation"); Giarratano v. Johnson, 521 F.3d 298 (4th Cir. 2008)(finding that a state prisoner's claim that the statutory exclusion of prisoners from making requests for public records under the Virginia Freedom of Information Act was insufficient to state a claim for an as-applied violation of the equal protection clause;"the situation in which [plaintiff] finds himself is simply a result of the inequality inherent to such "imperfect" laws"). Accordingly, the undersigned finds that Plaintiff's "as-applied" constitutional challenge to the MPLA is without merit and that the United States' Motion to Dismiss should be granted.

**PROPOSAL AND RECOMMENDATION**

The undersigned therefore respectfully **PROPOSES** that the District Court confirm and accept the foregoing findings and **RECOMMENDS** that the District Court **GRANT** the United States' Motion to Dismiss (Document No. 9.), **DISMISS** Plaintiff's Complaint (Document No. 1.) and remove this matter from the Court's docket.

The Plaintiff is hereby notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge Irene C. Berger. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 6(e) and 72(b), Federal Rules of Civil Procedure, the Plaintiff shall have seventeen days (fourteen days, filing of objections and three days, mailing/service) from the date of filing of this Findings and Recommendation within which to file with the Clerk of this Court specific written objections identifying the portions of the Findings and Recommendation to which objection is made and the

---

one million)

basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, District Judge Berger and this Magistrate Judge.

The Clerk of this Court is directed to file this "Proposed Findings and Recommendation" and to mail a copy of the same to Plaintiff, who is acting *pro se*.

Date: February 3, 2010.

*R. Clarke VanDervort*
R. Clarke VanDervort
United States Magistrate Judge